PONDER, Judge.
This is a suit for partition of community property. Defendant appealed from a finding that three tracts of land were community property. Plaintiff answered the appeal complaining of the finding that the community was indebted for the value of the property and for some improvements.
The issues are: (1) whether the legislation eliminating the “double declaration” requirement should be applied retroactively; (2) whether the tracts of land in question belong to the community or are the separate property of the defendant; (3) whether parol evidence is admissible to prove the status of the property; and (4) whether defendant is entitled to reimbursement, if the property is community, of the purchase price and the cost of improvements.
We reverse and render.
After plaintiff and defendant were divorced in 1980, plaintiff filed suit for judicial partition of the community of ac-quets and gains. Three tracts of land, acquired by transfer from defendant’s mother to defendant, were claimed as separate property by defendant and as community property by plaintiff. The acts transferring title to the property were in the form of sales and recited cash consideration totalling $14,899.00. These acts named only the defendant as vendee, but the acts did not contain the “double declaration” [1] that the property was acquired with the separate funds of the husband and was obtained for his separate estate.
The trial court ruled that the double declaration requirement was a rule of classification of property.
C.C. art. 2340 was amended by Acts 1979, No. 709, effective January 1, 1980, to read as follows:
“Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property.”
Wood v. Wood, 424 So.2d 1143 (La.App. 1st Cir.1982) declared the law to be retroactive and rejected the contention that the double declaration was a rule of classification of property.
*1018 Plaintiff argues that because the acts of sale were in authentic form, defendant cannot introduce parol evidence to contradict their terms. We do not agree. The parol evidence rule does not apply when the writing is collateral to the issue involved and the action is not based on the writing, as is the case here. Wampler v. Wampler, 239 La. 315, 118 So.2d 423 (La.1960); Wood v. Wood, supra; Broadway v. Broadway, 417 So.2d 1272 (La.App. 1st Cir.1982), writ denied, 422 So.2d 162 (La.1982).
The party asserting the separate nature of property acquired during the marriage has the burden of overcoming a strong presumption in favor of the community. Curtis v. Curtis, 403 So.2d 56 (La.1981). The jurisprudence has varyingly articulated the requisite standard of proof; these include: (1) “conclusive”, R.D.M. Corporation v. Patterson, 255 La. 301, 230 So.2d 820 (La.1970); (2) “clear and convincing”, Cox v. Cox, 398 So.2d 1171 (La.App. 2d Cir.1981); (3) “clear and positive”, Lenard v. Lenard, 386 So.2d 1043 (La.App. 4th Cir.1980); and (4) “clear strict and legally certain”, Prince v. Hopson, 230 La. 575, 89 So.2d 128 (La.1956).
The deeds recited that defendant was “married but once and then to Brenda Marie Brignac, with whom he is now living.” Although cash consideration was recited in the acts, both defendant and his mother, the vendor, testified that no cash was exchanged between them, that the transfer was intended as a repayment for defendant’s rights in the succession of defendant’s father. Defendant had been the owner of U.S. bonds set aside for his future education worth $14,898.80 and he gave this amount to his mother to enable her to compromise adverse succession claims. She transferred the property in question to defendant to repay him for the bonds. She did not have the property appraised prior to the transfer; the amounts put on each act as cash consideration were calculated to add up to a sum roughly equivalent to the amount of the defendant’s bond proceeds. Plaintiff and defendant were living together at the time the property was transferred from defendant’s mother. They moved into a residence on one of the lots and remained there until their physical separation.
Plaintiff had at various times made statements that cast doubt upon the community’s ability to pay the recited consideration.
We conclude that defendant has proved the property to be his separate property under LSA-C.C. art. 2341.[2]
The trial court also awarded defendant the sums of $14,889.00 and $3,244.11, based on its conclusion that although the property was community, defendant had expended separate funds to acquire it and to add improvements to it. Because we have determined that the property belongs to defendant’s separate estate, we must also reverse these reimbursement awards.[3]
For the foregoing reasons, the judgment of the trial court is reversed. There is now judgment in favor of the defendant and against the plaintiff declaring the following to be defendant’s separate property:
One certain lot or parcel of ground, together with all the rights, ways, privileg *1019 es and servitudes thereto attached or in anywise appertaining, situated in the City of Baton Rouge, Parish of East Baton Rouge, Louisiana, in that certain subdivision known as EAST DAYTON and being designated on a map thereof prepared by A.G. Mundinger, C.E. and Surveyor, dated October 28, 1946, of record as Original 69, Bundle 1957 in map book 12, folio 27, in the office of the Clerk and Recorder of this parish as LOT NUMBER ONE (1), EAST DAYTON, said lot fronting Seventy (70) feet front on the south side of Prescott Road by a depth between parallel lines of One Hundred Fifty-five (155) feet, being the same property first acquired by present vendor as her separate property from John G. Bourke, as per act of record dated February 21, 1957, recorded as Original 93, Bundle 3898 in the records of the Clerk and Recorder of this Parish and State and then in that Judgment of Possession filed in the “Succession of Benjamin J. Tullier, Sr.”, Probate Number 20,018 on the docket of the Nineteenth Judicial District Court in and for the Parish of East Baton Rouge, State of Louisiana, on the 28th day of October, 1970.
Two (2) certain lots or parcels of ground, together with improvements thereon located in that subdivision of the City of Baton Rouge, Louisiana known as SUBURB ISTROUMA, and designated according to the official map of said subdivision as LOTS ONE (1) and TWO (2) of SQUARE 209, each lot measuring Forty feet (40) front on Alliquippa Street by a depth of One Hundred (100) feet, and being the same property first acquired by present vendor as her separate property from Mrs. Mary Ellen McTopy Burns, as per act of record dated July 9, 1958 and recorded in the records of the Clerk and Recorder of this Parish and State and then in that Judgment of Possession filed in the “Succession of Benjamin J. Tullier, Sr.”, Probate Number 20,-018 on the docket of the Nineteenth Judicial District Court in and for the Parish of East Baton Rouge, State of Louisiana, on the 28th day of October, 1970.
Two (2) certain lots of ground in that part of the City of Baton Rouge, Louisiana, known as SUBURB ISTROUMA, and designated according to the official plan thereof made by R. Swart, C.E., May 1, 1927, of record in Plan Book 7, Pages 48 and 49 of the Conveyance Records, as LOT NUMBERS TWENTY-THREE (23) and TWENTY-FOUR (24) of SQUARE NUMBER TWO HUNDRED NINE (209), each fronting Forty (40) feet on the westerly side of Geróni-mo Street, with a depth between parallel 'lines of One Hundred (100) feet, Lot No. 24 being at the corner of Mohican Street, and being the same property first acquired by present vendor as her separate property from Robert A. Hart, II, et al., as per act of record dated December 9, 1959, recorded as Book 1476, page 66, in the records of the Clerk and Recorder of this Parish and State and then in that Judgment of Possession filed in the “Succession of Benjamin J. Tullier, Sr.”, Probate Number 20,018, on the docket of the Nineteenth Judicial District Court in and for the Parish of East Baton Rouge, State of Louisiana, on the 28th day of October, 1970.
The costs are assessed to the plaintiff.
REVERSED AND RENDERED.

. The "double declaration” rule created a conclusive presumption that property purchased by a husband without declarations in the act that the property was being purchased with the husband's separate funds and for his separate estate was community property. Phillips v. Nereaux, 357 So.2d 813 (La.App. 1st Cir.1978), reh. denied, 361 So.2d 228.
The courts created this rule by interpretation of the matrimonial regime law prior to its 1978 and 1979 repeal and reenactment.

. LSA-C.C. art. 2341 provides:
"The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other spouse; damages or other indemnity awarded to a spouse in connection with the management of his separate property; and things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime."

. All sums were actually paid by defendant’s mother, with the exception of $336.60. In any case, the sums were all expended after the date of final judgment of divorce between the parties.