CHEHARDY, Chief Judge.
In this suit by a bank to collect on two $50,000 promissory notes, the defendants appeal from a judgment finding them personally liable. The district court awarded the amount of the notes, plus interest, attorney’s fees in the amount of $5,000 and court costs. The defendants do not contest that they signed the notes or that they received the money, but they assert that their liability was extinguished by the execution of a $100,000 note by the corporation they represented, which note they assert was substituted in place of their personal obligations.
Harry G. Zoblotsky and Harry L. Zoblot-sky were, respectively, chairman of the board and manager of New Orleans retail operations for Factory Outlet Shoes of Oklahoma, Inc. Factory Outlet Shoes operated a retail shoe store in New Orleans known as Imperial Shoes. In the fall of 1983, Harry G. Zoblotsky approached David Lichtenstein, commercial loan officer for Gulf Federal Savings Bank (then doing business as Gulf Federal Savings & Loan Association of Jefferson Parish) for a loan to Factory Outlet Shoes. After some initial discussion and negotiation, the Zoblotskys submitted a loan application and supporting documentation on behalf of Factory Outlet Shoes to the bank for consideration.
Lichtenstein testified that after reviewing the application, the bank’s loan committee instructed him to request collateral because the financial position of Factory Outlet Shoes was unfavorable. Harry G. Zob-lotsky offered to assign several leases of properties in Atlanta, Georgia, to the bank as security. The loan was delayed, however, due to legal problems with the assign-ability of the leases.
Meanwhile Imperial Shoes was in a financial bind and the Zoblotskys pressed Lichtenstein for the funds. Lichtenstein advised them he could make a personal loan to them in January 1984, for which they could substitute a corporate obligation after the problems with the leases were resolved. The Zoblotskys agreed and on January 9, 1984 they signed a $50,000 note in their individual capacities. They received a check for $50,000, which they personally endorsed and deposited in the corporate account of Imperial Shoes. On January 17, 1984 the Zoblotskys obtained another $50,000 loan, again signing the note in their individual capacities. The second check also was deposited into Imperial Shoes’ account.
Thereafter negotiations continued regarding a loan to the corporation that could be substituted for the personal notes. On February 14, 1984 Harry G. Zoblotsky as President of Factory Outlet Shoes signed a notarial act entitled, “Pledge and Assignment of Leases and Rents,” between Factory Outlet Shoes of Oklahoma, Inc. as pled-gor and Gulf Federal Savings Bank as pledgee. The act recited that it was given as security for the payment of a $100,000 promissory note payable by Factory Outlet Shoes of Oklahoma, Inc. to Gulf Federal Savings Bank.
According to Lichtenstein and the secretary of the bank’s attorney, however, no such note was ever prepared or signed. Lichtenstein stated that he and the Zoblot-skys had planned to meet to sign the note, but he was detained in meetings and could not return to his office that afternoon. Subsequently negotiations broke down because he could not agree with Harry G. Zoblotsky regarding payout terms for the note, which was to substitute for the Zob-lotsky’s personal notes.
Shortly afterward, Imperial Shoes closed its doors. On September 30, 1984 Factory Outlet Shoes of Oklahoma, Inc. ceased operations and went out of business. On October 24, 1984 Gulf Federal filed this suit, alleging the Zoblotskys had failed to pay any of the interest or principal due on their personal notes.
In defense the Zoblotskys assert that their personal obligations have been extinguished by a novation of the debt in the form of an alleged $100,000 promissory note from Factory Outlet. They are unable to prove the existence of such a note other than by the following reference made to it in the Act of Pledge and Assignment of *1250 Leases and Rents between Factory Outlet and Gulf Federal:
“Pledgor is justly and truly indebted unto the Pledgee in the full and true sum of ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) DOLLARS, cash in hand delivered by Gulf Federal Savings Bank to the said Factory Outlet Shoes of Oklahoma, Inc., and represented by a certain promissory note, more particularly described as follows: payable to the order of Gulf Federal Savings Bank for $100,000.00, with interest at the rate of Chase Manhattan prime plus two (2%) percent per annum from date until paid with the note due on demand or if no demand, one year from the date of execution, and other terms as more fully described in said note.”
Neither Harry L. nor Harry G. Zoblotsky could recall signing such a note.
There is no question that if a $100,-000 promissory note had been signed, it would have been a novation of the debt between the Zoblotskys and Gulf Federal even in the absence of language expressly declaring an intent to novate. The facts and circumstances surrounding the transaction clearly show the parties intended a novation should take place if the $100,000 note were signed. See Pike Burden Printing v. Pike Burden, Inc., 396 So.2d 361 (La.App. 1 Cir.1981).
As stated above, however, the defendants were unable to prove that any $100,000 promissory note by Factory Outlet Shoes had ever been confected. To the contrary, plaintiff presented proof that no such note was ever drawn up because of disagreements between the parties. Accordingly, the trial judge was correct in finding there was no novation.
We note that defendants have asserted, erroneously, that the Act of Pledge and Assignment of Rents and Leases is in itself a novation of their individual debts. This is incorrect, as a pledge is an accessory obligation rather than a principal obligation, and without the principal obligation the bank could obtain no security interest through the pledge. LSA-C.C. art. 1913; LSA-C.C. art. 3138.
The Zoblotskys argue further that the trial court erred in allowing the introduction of parol evidence to vary the terms of the Act of Pledge and Assignment of Leases and Rents. Without the testimony that the $100,000 note mentioned in the Act of Pledge was never signed, they contend, the recitations of the Act of Pledge would be conclusive proof of a novation of the debt. They assert that the Act of Pledge is an authentic act and as such is self-proving. Thus, testimonial evidence may not be admitted to negate or vary its contents. LSA-C.C. art. 1848.
We agree with the trial judge, however, that the parol evidence rule does not apply to the Act of Pledge in this suit. The rule against admission of parol evidence to vary or contradict a written contract does not apply when the writing on which the evidence is sought to be introduced is collateral to the issue involved and the action is not based upon the writing. Wampler v. Wampler, 118 So.2d 423 (La.1960); Tullier v. Tullier, 450 So.2d 1016 (La.App. 1 Cir.1984), aff’d 464 So.2d 278 (La.1985). Here, the action is not an attempt to enforce the Act of Pledge and Assignment of Rents and Leases, nor even an attempt to enforce the alleged $100,000 promissory note against Factory Outlet Shoes. The suit is to enforce the two $50,-000 promissory notes between the bank and the Zoblotskys. Clearly, the Act of Pledge is collateral to that issue and the parol evidence is admissible.
For the foregoing reasons, the judgment of the district court is affirmed. Costs are assessed equally against the parties.
AFFIRMED.